UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CASSANDRA WEBB, o.b.o. C.E., *a minor*, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER ANDREW SAUL, <br><br> Defendant. | Case No. 20-12004 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Patricia T. Morris |

**OPINION AND ORDER
ADOPTING IN PART REPORT AND RECOMMENDATION [21],
GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [20], AND GRANTING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [17]**

After the Commissioner of Social Security denied an application for benefits filed by Cassandra Webb on behalf of her son, C.E., Webb filed this lawsuit. Her suit challenges the Commissioner's determination that C.E.'s medical conditions do not qualify him for disability benefits. Magistrate Judge Patricia T. Morris recommends that this Court affirm the Commissioner's determination; Webb objects to that recommendation. As explained below, this Court finds that the Commissioner erroneously discredited Webb's testimony about C.E.'s impairments, and that, on this record, this Court cannot say the error was harmless. So the Court will remand this case to the Commissioner for further evaluation of Webb and C.E.'s application for benefits.

I.

C.E., a young child, suffers from several medical conditions, including asthma, gastroesophageal reflux disease (GERD), and attention-deficit/hyperactivity disorder (ADHD). In July 2013, when C.E. was 14 months old, he accidently ingested a laundry-detergent pod. This resulted in cardiac arrest, intubation, and a 14-day hospitalization (PageID.311); the accident also caused scarring to C.E.'s lungs, esophageal burns or ulcerations, and GERD. (PageID.71, 662).[1] Before the age of three, C.E. went to the emergency room or was hospitalized three more times; each visit was for difficulties breathing. (PageID.419 (Dec. 2013); PageID.415 (Jun. 2014); PageID.436 (Aug. 2014).) In 2018, when C.E. was six years old, he was hospitalized twice more for pneumonia. (PageID.763 (Oct. 2018); PageID.697 (Dec. 2018).) Also in 2018, C.E.'s first-grade teacher informed C.E.'s mother, Cassandra Webb, that C.E. was engaging in disruptive behavior, struggling to focus, and struggling academically. (PageID.218.) After attending first grade for about a month, the school became concerned about C.E.'s exposure to germs; so C.E. started homeschooling. (PageID.70.)

Webb believes that because of C.E.'s health issues, he qualifies for supplemental security income under the Social Security Act. So in October 2015, she applied for those benefits. (PageID.44.) After Webb's application for benefits was denied, she sought review by an administrative law judge. Webb testified before ALJ

---

[1] Unless indicated otherwise, all citations are to the administrative record, which has been docketed as ECF No. 12.

Andrew Sloss in May 2019. (PageID.66–81.) ALJ Sloss found that C.E. had not been disabled between October 2015 (three-and-a-half years old) and July 2019 (seven years old). (PageID.85.) When the Social Security Administration's Appeals Council declined to review ALJ Sloss' disability determination, his determination became the final determination of the Commissioner of Social Security. (PageID.30.)

Webb then filed this lawsuit, effectively appealing the Commissioner's disability determination. Like all social security cases filed in this District, the case was referred to a magistrate judge to issue a report and recommendation. In August 2021, Magistrate Judge Patricia T. Morris issued her report. (ECF No. 21.) She recommends that the Court affirm the Commissioner's disability determination. (ECF No. 21, PageID.938.)

Webb objects to that recommendation. (ECF No. 22.) She makes three objections, which track the three arguments she made to Magistrate Judge Morris. For one, Webb argues that the ALJ should have given more weight to her testimony. (ECF No. 22, PageID.952–953.) Webb's other two objections relate to medical and functional equivalence, respectively. If a child's impairment meets, medically equals, or functionally equals one of 100 or so listed impairments, the child is deemed disabled (and thus eligible for benefits). *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014). According to Webb, the ALJ did not assess medical equivalence or, at least, failed to explain the basis for his finding of no equivalence. (ECF No. 22, PageID.944.) Webb also asserts that the ALJ erred in assessing functional equivalence. (*Id.* at PageID.948.)

3

II.

When, as here, a party files an objection to a magistrate judge's report and recommendation, the district judge reviews the issue raised by the objection de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

And that means this Court reviews the ALJ's disability determination using the same standard that the Magistrate Judge applied: this Court affirms the ALJ's determination if he applied the correct legal standards and his findings are supported by "substantial evidence." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

III.

A.

Webb claims that the ALJ erred in not crediting her testimony about C.E.'s limitations (and objects to the Magistrate Judge's finding that the ALJ's credibility assessment was not error). To better appreciate this objection, a brief summary of Webb's testimony before the ALJ is in order.

Regarding C.E.'s asthma and lung damage, Webb testified that C.E.'s left lung would repeatedly get pneumonia, that he had been recently hospitalized for pneumonia, and that doctors had to flush and scrape out bacteria from his left lung. (PageID.70–71.) She also told the ALJ that C.E.'s pulmonologist did not want him to go outside when it was below 32 degrees or in the 90s. (PageID.75.) Webb also

explained that C.E. had a hard time keeping up with his five-year-old sister and that he could not do "excessive running or . . . jumping." (PageID.75–76.)

Regarding C.E.'s GERD, Webb testified that C.E. would sometimes throw up from coughing, from crying, and even just getting up. (PageID.76.)

Webb additionally testified that not long before the hearing, C.E. had been diagnosed with an immune-system issue, leukocytosis, that required vitamin D and other medication. (PageID.78.) Perhaps because of leukocytosis or perhaps because of C.E.'s asthma (or both), C.E.'s school principal and teacher believed that in-person class would expose C.E. to too many germs from other children. (PageID.70.) In the homeschooling program, C.E. still met with his teacher twice a week, but everything needed to be sanitized beforehand. (PageID.72.)

Webb also testified about C.E.'s mental and emotional health. Regarding C.E.'s ADHD, Webb explained to the ALJ that C.E.'s first-grade teacher had sent her "numerous" letters and that they had "numerous" phone calls. (PageID.73.) Webb explained that C.E. would not pay attention at school and would "[b]ounc[e] from one f[oo]t to the next." (PageID.73.) And because C.E. was bouncing around so much, his asthma would get triggered, which then required a trip to the principal's office to use his inhaler. (PageID.73.) Webb also mentioned that because C.E. had frequently seen the doctor or been hospitalized (approximately every other month), C.E. had developed a fear of dying. (PageID.72, 76.) For instance, if it was raining, C.E. would be scared of catching pneumonia. (PageID.76.)

5

In deciding that Webb's statements about the severity and limiting effects of C.E.'s impairments were not entirely credible, the ALJ stated in part, "Although the claimant's mother testified that his activities were significantly limited by his asthma, the claimant's treatment history shows that he was physically active, seeking treatment after falling off his bike or slipping on ice. These factors undermine the testimony of the claimant's mother that he had to avoid all physical activity and exposure to cold because those triggers could cause asthmatic exacerbations." (PageID.50.) The ALJ also stated, "the claimant did not exhibit any indicia of breathing problems during the hearing and spoke without any difficulty." (*Id.*) And, according to the ALJ, "Although the claimant's mother indicated the claimant had an extreme fear of dying, this problem was not evident in the medical or educational records." (*Id.*) Largely for those reasons, the ALJ found that Webb's "statements concerning the intensity, persistence and limiting effects of [C.E.'s] symptoms are not fully supported." (*Id.*)

Webb says the ALJ's reasons for discounting her testimony are erroneous. Webb points out that she never stated that C.E. had to avoid "all" physical activity and exposure to cold. (ECF No. 17, PageID.867; ECF No. 22, PageID.953.) Instead, she testified that C.E. cannot engage in "excessive running . . . or jumping" and that the pulmonologist advised C.E. to be inside when it was below 32 degrees. (PageID.75.) And regarding the ALJ's statement that C.E. "did not exhibit any indicia of breathing problems during the hearing and spoke without any difficulty," Webb points out that C.E. attended the hearing for only one minute and made very brief

6

statements. (ECF No. 17, PageID.868; ECF No. 22, PageID.953.) Webb also stresses that C.E. had been to numerous hospitals and doctor's appointments over the years, "enduring the sort of poking and prodding and physical invasiveness that makes even the most hardened adult squeamish." (ECF No. 17, PageID.868; *see also* ECF No. 22, PageID.953.) Thus, the ALJ's suggestion that C.E. is not fearful of death "is not only insensitive but also unsupportable." (ECF No. 17, PageID.868; *see also* ECF No. 22, PageID.953.)

Although the Court is well aware that an ALJ's credibility assessment is entitled to great deference because an ALJ can assess a witness' demeanor while this Court cannot, *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), here the transcript of the hearing along with the ALJ's written narrative reveal clear error. The ALJ cited C.E.'s ability to ride a bike as a reason for discounting the severity of his breathing issues. But the two are not inconsistent. Even a child with severe breathing problems can occasionally go for a bike ride. The ALJ also used the fact that C.E. had slipped on ice to discount Webb's testimony that a pulmonologist did not want C.E. to go outside in under 32-degree weather (or above 90-degree weather). But C.E. lives in Michigan—it would be impossible for him to completely avoid going out in under 32-degree weather. And simply because C.E. was outside on one cold day does not mean that a pulmonologist did not recommend that C.E. not do so. And the Court agrees with Webb that witnessing C.E.'s breathing at the hearing for one minute hardly says anything about C.E.'s breathing problems over the course of a

7

several-year disability period. In short, the ALJ gave unsupportable reasons for finding Webb's testimony less than credible.

But, without more, that conclusion does not warrant reversing or remanding the Commissioner's disability determination. The Sixth Circuit has explained that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("[H]armless error analysis applies to credibility determinations in the social security disability context.").

Although Webb does not directly argue that the ALJ's credibility assessment resulted in harmful error, she indirectly makes that argument. Webb argues at length that the ALJ erred in assessing functional equivalence. (ECF No. 17, PageID.859–866; ECF No. 22, PageID.948–952.) Under the functional-equivalence test, a child is disabled if he has "marked" limitations in two (or more) of six functional domains or an "extreme" limitation in one (or more) of the six domains. *See* 20 C.F.R. § 416.926a. Much of Webb's testimony supports her claim that C.E. had "marked" limitations in several of the functional-equivalence domains. So by challenging the ALJ's assessment of her credibility, and by also arguing that C.E. is disabled under the functional-equivalence test, Webb has indirectly claimed that the ALJ's erroneous credibility assessment was not harmless.

8

Applying Webb's testimony about C.E.'s limitations to the functional-equivalence domains, the Court cannot conclude that the ALJ's erroneous credibility assessment was harmless.

Consider first the domain of acquiring and using information. This domain relates to how well a child learns information and uses the information that he learns. 20 C.F.R. § 416.926a(g). A child under six is expected to begin to learn skills that will help him to eventually read, write, and do arithmetic. 20 C.F.R. § 416.926a(g)(2)(iii). A child age six to twelve (C.E. turned six years old about one year before the ALJ's determination) should "be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iii).

Several aspects of Webb's testimony show that C.E. is considerably limited in his ability to learn information and use the information he learns. For instance, Webb testified that she received "numerous" phone calls and letters from C.E.'s first grade teacher, even though he was only in school for a month or so. (PageID.72.) Webb further testified that she had to go to the school because C.E. "needed to be redirected." (*Id.*) She also explained how C.E.'s asthma affected his ability to learn: because C.E. was hyperactive and bounced around, his asthma would get triggered, which would then require him to go to the office for his inhaler (which, presumably, caused C.E. to miss some class time). (PageID.73.) Webb further testified that because of other children's germs, C.E.'s principal and teacher suggested homeschooling. (PageID.72.) Webb explained that in the homebound program, C.E. receives only two hours of in-person instruction with his teacher each week. (*Id.*) All

9

together, this testimony shows that C.E. has considerable difficulty acquiring and using information.

Given that Webb testified to considerable limitations in the domain of acquiring and using information, if the ALJ had not erroneously discounted Webb's testimony, he might well have found that C.E. had "marked" limitation in that domain. Indeed, even discounting Webb's testimony, the ALJ did not find that C.E. had "no" limitations in this domain; he still found that C.E. had limitations but that they were "less than marked." (PageID.52.) So it is quite possible that if Webb's testimony is given more weight, the ALJ would find that C.E. was markedly limited in the domain of acquiring and using information. And such a finding would change the outcome. In another domain (health and physical well-being), the ALJ found that C.E. had "marked" limitation; so if the ALJ had additionally found that C.E. was markedly limited in the acquiring-and-using-information domain, C.E. would have qualified for benefits. Thus, the Court cannot say that the ALJ's discounting of Webb's testimony had no harmful effect on the ultimate disability determination.

The ALJ's erroneous credibility assessment may have also led to an erroneous assessment of the attending-and-completing-tasks domain. This domain pertains to how well a child is able to focus and maintain attention and how well a child can finish activities, including the pace at which the child performs activities. *See* 20 C.F.R. § 416.926a(h). Aspects of Webb's testimony indicate that C.E. has considerable limitation in his ability to focus and maintain attention and complete activities. Webb testified, "[C.E.'s] teacher . . . sent numerous letters to me. I had numerous phone

10

calls. I had to go up to the school because he needed to be redirected. He wasn't paying attention." (PageID.72.) Notably, C.E. was only with his teacher on a full-time basis for a month. (*See* PageID.72.) Moreover, the ALJ provided almost the same reasoning for assigning C.E. a "less than marked" limitation in this domain as he did when assessing C.E.'s ability to acquire and use information. (*Compare* PageID.52, *with* PageID.53–54.) Thus, the ALJ apparently viewed the two domains as closely related. Yet, as explained above, Webb's testimony, had it been credited, could have warranted a marked limitation in the acquiring-and-using-information domain. Given that the ALJ viewed the two domains similarly, his erroneous credibility assessment could have likewise led him to erroneously assess the attending-and-completing-tasks domain.

The ALJ's erroneous credibility assessment might have also had a ripple effect on his assessment of the health-and-physical-well-being domain. (Although Webb does not develop her argument that the ALJ erred in assessing the health-and-well-being domain in her objections (ECF No. 22, PageID.951), she did make that argument in her motion for summary judgment (ECF No. 17, PageID.865), and this Court is not precluded from sua sponte reviewing an issue raised at summary judgment de novo, *see Thomas v. Arn*, 474 U.S. 140, 154 (1985).) In assessing the health-and-physical-well-being domain, an ALJ "consider[s] the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning" (to the extent that they were not already considered in the manipulating-objects domain). 20 C.F.R. § 416.926a(*l*). Even

11

discounting Webb's testimony, the ALJ still found that C.E. had a "marked" limitation in this domain. And much of Webb's testimony relates to "the cumulative physical effects of [C.E.'s] physical or mental impairments," such that the ALJ may have found an "extreme" limitation in this domain had her testimony been given greater weight. For instance, Webb testified that C.E.'s left lung would repeatedly get pneumonia and that C.E. had been hospitalized for pneumonia not long before the hearing. (PageID.70–71.) Webb also testified that C.E. would sometimes throw up from coughing, from crying, or from just getting up. (PageID.76.) And Webb told the ALJ that C.E. had been recently diagnosed with an immune-system issue, leukocytosis. (PageID.78.) Had the ALJ given Webb's testimony more weight, he might have determined that C.E. had an "extreme" limitation in the health-and-physical-well-being domain, which, on its own, would qualify C.E. for benefits.

* * *

In sum, the ALJ gave poor reasons for discounting Webb's credibility—the ALJ's reasons either misconstrue Webb's testimony or are simply too weak to justify finding Webb not credible. And the Court cannot say that had the ALJ not erred, he would have reached the same disability determination. Much of Webb's testimony bears on the functional domains of acquiring and using information, attending and completing tasks, and health and physical well-being. A marked limitation in the first two, or an extreme limitation in the third would result in benefits. Accordingly, this case must be remanded to the Commissioner for further assessment of Webb and C.E.'s application for benefits.

B.

Although what has already been said suffices to remand this case, because the parties have fully briefed the issue, the Court will address Webb's objection relating to the ALJ's assessment of medical equivalence.

To appreciate this objection, a bit of law is useful. If a claimant's impairment "meets" an impairment on the Commissioner's list of impairments, *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, the claimant is deemed disabled. As an example, for a claimant's asthma to "meet" the listed asthma impairment, the claimant's asthma must have resulted in three hospitalizations within a 12-month period, the hospitalizations must have been at least 30 days apart from each other, and each hospitalization must have been at least 48 hours long. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 103.03. If a claimant's impairment fails to "meet" a listing (for instance, the claimant had three asthma induced hospitalizations in a year, but one was for only 24 hours), a claimant can still be found disabled if his impairment is equivalent to a listing. *See Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014); *Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 762 (6th Cir. 2014). And a claimant can show equivalence in two ways: functional equivalence (discussed above) or medical equivalence (the subject of this objection).

It is clear that Webb believes that the ALJ erred with respect to medical equivalence; but beyond that, Webb's argument gets cloudy. (*See* ECF No. 22, PageID.944–948.) As this Court understands the argument, Webb believes that the ALJ's meets-or-medically-equals analysis was entirely cursory. (ECF No. 17,

13

PageID.856 ("The ALJ offered nothing more than a cursory sentence[.]"); ECF No. 22, PageID.947 (characterizing the ALJ's equivalence analysis as "conclusory").) And because the ALJ's analysis was cursory, Webb infers that the ALJ did not assess medical equivalency. (ECF No. 17, PageID.858 ("the ALJ should have, at the very least, explored the possibility of listing level equivalence"); ECF No. 22, PageID.946–947 (noting that the "relevant" and "central" issue is the ALJ's failure to assess medical equivalence).) And even if the ALJ did assess medical equivalency, Webb maintains that his explanation for why C.E.'s impairments did not medically equal a listing was so cursory that it violated case law requiring ALJs to explain their decisions. (ECF No. 22, PageID.858–859, 947.)

So understood, the root of Webb's argument is that the ALJ gave a cursory meets-or-medically-equals analysis. And that much Webb is right about. The ALJ merely stated: "The severity of the claimant's asthma does not meet, and no medical source has opined medical equivalence of, listing 103.03. The medical evidence of record does not contain evidence of exacerbations or complications requiring three hospitalizations, lasting at least 48 hours, within a 12-month period and at least 30 days apart." (PageID.48.) But cursory can be enough.

Indeed, as relevant here, Social Security Ruling 17-2p says, "If an adjudicator at the hearings . . . level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, *the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically*

14

*equal a listed impairment.*" SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017) (emphasis added). "Generally," the ruling continues, "*a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.* An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.* (emphasis added). In other words, under SSR 17-2p, the ALJ did not have to write a word more than he wrote about medical equivalence.

And if that is the case, there is little reason to infer from the ALJ's cursory analysis that the ALJ failed to assess medical equivalency. And there is no reason to find that the ALJ committed reversible error by failing to explain why C.E.'s impairments did not medically equal a listing.

And even assuming that the ALJ erred in assessing medical equivalence, Webb has not shown how that error was harmful. According to SSR 17-2p, when a disability application has reached the ALJ level, medical equivalence must be based on "[a] prior administrative medical finding from [Federal or State agency Medical Consultants] from the initial or reconsideration adjudication levels supporting the medical equivalence finding" or "[medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding." SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017). As the ALJ stated, "no medical source has opined medical

equivalence of[] listing 103.03." (PageID.48.) This appears to be accurate; at a minimum, Webb has not shown it is inaccurate.

Perhaps an argument could be made that SSR 17-2p does not govern Webb's application—but if there is such an argument, Webb has not made it. The Magistrate Judge found that although Webb applied for benefits before the Commissioner issued SSR 17-2p, that ruling retroactively applied to C.E.'s application. (ECF No. 21, PageID.924.) In her objections, Webb does not argue that SSR 17-2p does not apply retroactively. The closest Webb gets to that argument is urging the Court to follow a pair of cases demanding that an ALJ explain his rulings, *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846 (E.D. Mich. 2012), and *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328 (E.D. Mich. June 18, 2012). (ECF No. 17, PageID.858; ECF No. 22, PageID.947.) But both of these cases predate the 2017 SSR and thus do not say a word about it. Given that Webb has not provided a good reason for finding that SSR 17-2p does not apply to C.E.'s application, the Court finds that it does. *See Balimunkwe v. Bank of Am., N.A.*, No. 16-3263, 2017 WL 4216586, at *2 (6th Cir. Jan. 17, 2017) ("A district court need address de novo only the issues raised in specific objections to a magistrate judge's report and recommendation."); *Woodard v. Comm'r of Soc. Sec.*, No. 1:14-CV-1050, 2016 WL 1165397, at *1 (W.D. Mich. Mar. 25, 2016) ("Failure to object to an issue waives that issue[.]").

Given SSR 17-2p, the Court will overrule Webb's objection that the ALJ erred in assessing medical equivalence.

IV.

For the foregoing reasons, the Court ADOPTS IN PART Magistrate Judge Morris' recommendation (ECF No. 21), GRANTS IN PART the Commissioner's motion for summary judgment (ECF No. 20), and GRANTS IN PART Webb's motion for summary judgment (ECF No. 17).

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security is REVERSED, and this case is REMANDED to the Commissioner of Social Security for further adjudication consistent with this opinion. In particular, the ALJ is to permit Webb and C.E. to again testify, reassess Webb's credibility (and, if appropriate, C.E.'s credibility), and then decide whether Webb's and C.E.'s testimony, to the extent that it is credible, alters the disability determination. This includes any effect that the testimony may have on functional equivalence.

SO ORDERED.

Dated: February 8, 2022

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE